Curia, per

Butler, J.
The Court having come to the conclusion to grant defendants a new trial on the first ground, it is unnecessary to, consider any other.
The first ground is, that Jesse Floyd, being owner of the boat, was not a competent witness against the defendants. Had Floyd occupied the relation of master to another who was the owner of the boat, he might have been a competent witness; but he was exclusively the owner of the boat, himself, and was liable to the freighter for negligence and nondelivery of the goods according to the bill of lading. As a witness, he might exonorate himself from this liability, by enabling the plaintiff to recover a judgment against the underwriters. Such a judgment, when satisfied, would be an effectual bar to the plaintiffs bringing an action against the owner. The interest of the witness coincided with that of the party calling him, and this is in general a good objection to his competency. On policies of insurance, a master, (much more ah owner,) is not permitted to testify to such *125 fraudulent acts as would amount to barratry, by way of claim, or defence. Suppose the underwriters, there, had called the witness. The objection would have prevailed ; and, if so, why is not the converse good 1
This is a question which must be decided by authority. In the case of Taylor vs. McVicar, (6 Esp. C. 27,) Sir James Mansfield held that the master, being part owner, was not a competent witness for the assured, on goods, where the de-fence was deviation, because he was interested as owner to exonorate the ship from liability. I think the true principle is laid down in Moorish vs. Foote, (8 Taunt. 454; 2 Moore, 508.) The principle will appear from a recital of Lord Kenyon’s opinion, in the case of Rothero vs. Elton, (Peake’s C. 84,) noticed in Philips on evidence, but not fully reported. Gibbs, C. J. in the case of Moorish vs. Foote, quotes and explains this case with approbation. It was an action on a policy of insurance by the assured against the assurer: Defence, that the ship was not seaworthy. Lord Kenyon held that the ship owner was not a competent witness ; because, if- he proved that the ship was seaworthy, he relieved himself from an action by the plaintiffs, for furnishing them with an incompetent ship, to which he would have been otherwise liable. If the plaintiff had recovered a verdict against the underwriters, on the testimony of the witness, that the ship was staunch, they would forever have been silenced as to any action against the ship-owner, for loss arising from his providing them with a ship that was not seaworthy. The principle is this; witnesses are incompetent where they are directly interested in the event of a suit. The judge then went on to apply the principle to the case before him, which was a case for negligently driving a mail coach against plaintiff’s wagon horse, whereby he died, and held that the plaintiff’s waggoner was incompetent to prove the negligence of the defendant, because he was interested in the event of the suit, for if the plaintiff recovered on his testimony, the witness would be placed in a state of security.
*126 Apply the principle of these cases to the one under consideration.- If the plaintiffs were to recover, they could not sue Floyd, but would place him in a state of security, which he would not otherwise have occupied. For, until verdict against either the underwriters, or the owner of the ship, the freighter has a right to bring his action against either, and where it is a contest between them, neither should be a witness to charge the other. This general principle, I think, may be deduced trom the authorities, which are somewhat conflicting on the subject. The conflict has arisen from the difference of circumstances which have distinguished the cases. The general principle seems to be acknowledged, but its application has not always been made with uniformity and precision. In the case of Gevers vs. Mainwaring, (3 Holt’s C. 139,) all the authorities on this point are referred to by the reporter. In that case it was decided that a broker was a competent witness to prove a contract; but, in an action brought against the principal for negligence and misconduct, in the course of his employment in the purchase of certain bales of tobacco, the broker who made the contract for him could not be called to prove that there was no negligence or misconduct in the execution of it, without a release from the principal.
It may be in the'power of the plaintiffs to prove, as I think was established in the trial below, that Floyd fraudulently converted the cotton to his own use, and, if this was barratry, it was a risk covered by the policy. Could this position be sustained, the verdict might stand independently of Floyd’s testimony. But all the English and American authorities are against it. The general definition of barratry is a wrongful violation of trust by the master and mariners against the interest of the owner. It presupposes the relation of owner and master. In Nutt & Bodeau, (1 T. R. 330,) Lord Mansfield considered the point fully. He says, “ the point to be considered is, whether barratry, in the sense in which it is used *127 in our policies of insurance, can be committed against any but the owner of the ship, and it is clear beyond contradiction, that it cannot. For barratry is something contrary to the duty of the master and mariners, the very, terms of which imply that it must be in the relation in which they stand to the oioners of the ship. The words used are master and mariners, which are very particular. An owner cannot commit barratry. He may make himself liable, by fraudulent conduct, to the owner of the goods, but not as for barratry.” Since this decision, the question has never been doubted in the English or American courts, but has been frequently recognized when the owner and master was the same person.
Qrimke for the motion ; Thompson Sf Hunt, contra.
The motion for a new trial is granted.
The whole Court concurred.